THE MERCHANTS INSURANCE COMPANY OF NEW ORLEANS v. A. L.
ADDISON and others.

An agreement by a party to secure one against liability as the endorser of a note, in
case the latter would not bid against the former at a judicial sale, is invalid.  C. C.
1841, § 12.

Agreements or securities executed for the price of the commission of a public crime,
or for the violation of a public law, or the omission of a public duty, can neither be
enforced nor confirmed.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.
*Carter*, for the appellant.
*Elmore* and *W. W. King*, contrâ.

GARLAND, J.  The petitioners represent, that they executed a
policy of insurance on the steamer Homer, in favor of George
E. Richardson, for $3000 ; that the vessel has been lost ; and
that they are liable for the loss and are willing to pay it, but
that certain endorsements, purporting to be transfers, have been
made on the policy, one in favor of G. W. Huntington, and ano-
ther in favor of Thomas Laidlaw, purporting to be signed by
Richardson ; and further, that A. L. Addison & Co., and Samuel
Locke, have each levied attachments on the sum in their hands,
in suits they have commenced against Richardson, and that a
*fieri facias*, in favor of J. H. Jones against Richardson, has also
been levied on it.  In consequence of these various and conflict-
ing claims, which amount to much more than the sum of $3000,
the petitioners say that, although willing to act fairly and pay
the amount owing, yet they cannot safely pay to any one.  They,
therefore, pray that all the aforesaid persons be cited to come
forward and establish their rights to said sum, or any part of it;
that they be permitted to pay it into court, and be discharged
from all further liability whatever.  The money was paid over,
and all the parties appeared, except Jones, who has never an-
swered, nor has any default been taken against him.

For answer, A. L. Addison & Co. allege, that they are en-
titled to $1537 50, with interest from the 24th April, 1841,
and costs, by virtue of an attachment and judgment obtained

by them against Richardson. They deny that any legal assignment of the policy was ever made by Richardson to any person, or that any notice of a transfer was ever given to the company, previous to the attachment; and they allege further, that if any assignments were ever made, they were without consideration and void, and made to defeat the rights of these respondents.

G. W. Huntington says, that he is entitled to the sum of $1200, out of the amount of the policy, by virtue of a legal transfer, for a valuable consideration, from Richardson of that sum in the same. That said transfer was legally made and notified to the plaintiffs, on the 27th February, 1841, before any attachment by any person. He, therefore, asks to be paid the said sum of twelve hundred dollars, out of the sum deposited.

Thomas Laidlaw says, that he has a claim for $1800, by an assignment from Richardson on said policy, which was subsequent to that to Huntington; which transfer and assignment was notified to the plaintiffs, and approved before any attachment or seizure was made by any person. He, therefore, asks to have the said sum allowed him out of the fund in court.

Samuel Locke avers, that he is a creditor of Richardson, and claims to be paid out of the fund deposited, by virtue of having attached for the amount owing him, in the hands of the plaintiffs, before any transfer or notice of assignment; and, he denies the validity of any such; wherefore he asks to be paid his demand.

A. L. Addison & Co. introduced in evidence, the record of their suit and judgment against Richardson, commenced by attachment, levied on the 22d of March, 1841, in which the sheriff returns, that he had attached in the hands of the Insurance Company, the proceeds of the policy of insurance aforesaid, belonging to Richardson. Upon the judgment so obtained, an execution issued, upon which the sheriff returned, that he had "seized in the hands of the Merchants Insurance Company, goods, chattels, lands, tenements, monies, effects, rights, credits, or property of any kind whatever, particularly all monies due by them to the defendant on a certain policy, taken by said Insurance Company upon the steamboat Homer, and executed this writ in all things as the law directs." As the sheriff had

not, by the attachment, or the seizure, got any thing into his hands, A. L. Addison & Co. then resorted to a garnishment of the Insurance Company, to ascertain what funds of Richardson's were in their hands, to which an answer was filed by the president, detailing all the circumstances of the policy on the Homer, the loss, &c.; and he further answers, that "certain transfers purport to have been made, as appears by endorsements on said policy, but on what day they were made, I do not know of my own knowledge, nor otherwise than from said transfers. We were notified of said respective transfers, I believe, about the time they bear date, by the exhibition of the transfers, and approval was made thereof by our secretary and myself; but I am not able to state the precise dates of notice and approval." This answer relates to the assignments made to Huntington and Laidlaw.

On the trial, Cucullu, the president of the company, said, he believed the transfers on the back of the policy were notified to the company, and approved on the dates of said assignments by Richardson, and he gave his reasons for the belief. Mr. King, one of the counsel for Addison & Co., testifies that on his way to the court-house, with one of the firm, they called at the insurance office, and asked "a person in the office, having the appearance of a clerk, whether or not there had been notice of any assignment of the policy; that the clerk answered there had been no notice, and that none was necessary." He believes that McMurdo, the partner alluded to, had heard something of an assignment to Mr. Huntington. The assignment on the policy to Huntington, is dated February 27th, 1841, and is signed by Richardson; and immediately under it is written: "Transfer approved and recorded. Samuel S. Relf, Secretary." After this follows the assignment to Laidlaw, dated March 1st, 1841, and a similar approval; but neither dated. On the transfer book in the office, the assignments are entered, but without dates.

Huntington was examined, as well as all the other parties. He said that he did not know, of his own knowledge, whether the assignment was notified to the company, on the day of its date, or not. He then said, that the consideration for the assignment of $1200 of the policy to him, was, that Hoskins &

Wood, the owners of the Homer previous to Richardson, had given their note for the aforesaid sum, as a part of the price of her, on which note he was their endorser. When the boat was about to be sold by the United States marshal, he (Huntington) agreed with Richardson, that he would not bid against him for the boat, if he (Richardson) would agree to secure the payment of the note. This Richardson agreed to do, although in no way bound for the amount; and the assignment was made to secure the performance of this promise. After the boat was lost, he went to the Insurance Office, and was told by the president, or secretary, that the only attachment then in the office, was one in favor of Locke for $180.

The other parts of the evidence it is not necessary to state, as the contest in this court has been entirely between Huntington and Addison & Co. The court below decreed that they should be paid first, and rejected Huntington's demand altogether, on the ground that the consideration for it is prohibited by law, and that a contract founded on a promise not to bid at a judicial sale, is invalid, and without consideration. From this judgment Huntington has appealed.

The evidence as to the notice of the assignment previous to the attachment, is not very clear; and, on the other hand, it is very doubtful whether Addison & Co. obtained any lien, or preference, by the levy of their attachment, in March, 1841. The sheriff's return is vague and uncertain, and in several respects not in compliance with the law. And here it may not be amiss to remark, that many of the returns made by the sheriffs in the city of New Orleans, in attachment and other cases, that have come under our observation, are of the same character; but no question having been raised on them, we have passed them over. But these questions it is not necessary to decide, as the appellees have a judgment in their favor; and before the appellant can contest its legality with them, he must first show that he has a valid claim, founded on a legal consideration. The court below has said, that the agreement entered into between Huntington and Richardson, that the former should not bid against the latter, in consideration of his securing the former against loss, for an endorsement on an obligation to which Richardson

was in no way a party, is forbidden by law, and contrary to public order. In effect, it was a promise on the part of Richardson to pay Huntington $1200 not to bid against him at a public sale; and the question is, whether such a contract is binding, and can be enforced? We are of opinion that it cannot. The Civil Code, art. 1841, rule 12, says, that all "combinations with respect to sales, to enhance the price by false bids or offers, or to depress it by false assertions, are artifices which invalidate the contract, when practised by those who are parties to it, or give rise to an action for damages, where they are not." This article, it is true, does not exactly cover the case before us; but it would certainly have authorized Hoskins & Wood to set aside the sale, on the ground, that the agreement between Richardson, the purchaser, and Huntington, was illegal. That being true, we see no ground then for permitting Huntington to avail himself of his illegal contract to deprive Richardson's creditors of his property. This question was presented to the court in 4 La. 392, and it was then said, "it is not shown that the parties acted in violation of any positive municipal regulation; and the morality or immorality of their proceedings, is involved in so much doubt, as not to form a proper basis for a decree annulling the sale." In the 10 La., 187, it was held, that the purchaser of a judgment against himself, which he obtained at a sacrifice, by representing it to the appraisers and others, as valueless, was guilty of a fraud, and could not hold it. Story, in his Commentaries on Equity Jurisprudence, vol. 1, p. 290, No. 293, says, that "agreements whereby parties engage not to bid against each other at public auction, especially in cases where such auctions are directed or required by law, as in cases of sales of chattels, or other property on execution, are held void; for they are unconscientious, and against public policy, and have a tendency injuriously to affect the character and value of sales at public auction, and to mislead private confidence. They operate virtually as a fraud upon the sale." Fonblanque, in his Treatise on Equity, vol. 1, ch. 4, § 4, note x, sustains judge Story in his opinions; as do various decisions made in the highest tribunals in New York. 3 John. Cases, 29. 6 John. R. 194. 8 Ibid, 444. Our Code, and equity authors all treat such combina-

tions as fraudulent. Hence it has always been held, that all agreements, obligations, and securities, given as the price for the commission of a public crime, or for the violation of a public law, or for the omission of a public duty, are deemed incapable of confirmation or enforcement.

*Judgment affirmed.*