## No. 1111.

### S. MEYER VS. W. W. FARMER.

The right to amend pleadings is not reducible to inflexible rules. It must be determined in the exercise of a sound legal discretion. Amendments should always be allowed for the promotion of justice, where they cause no injury, provided time may be asked and allowed to a party pleading and showing surprise.

A supplemental answer which simply amplifies a general denial by enumerating the reasons for which plaintiff should not recover, and does not change the original relief asked, can be allowed to be filed shortly before trial and the case will be proceeded with when no motion for a continuance, for time to prepare, is made.

Exceptions to the admission of an act of sale in a case wherein recovery of the price is claimed by a purchaser, in consequence of his eviction from the property sold him cannot avail. The act is the fundamental fact on which the litigation rests. Exceptions to the refusal of the judge to admit cumulative testimony and to the reception of irrelevant proof need not be passed upon.

| | |
|---|---|
| 36 | 785 |
| 49 | 1484 |
| 36 | 785 |
| 104 | 119 |
| 36 | 785 |
| 114 | 822 |
| 36 | 785 |
| 119 | 791 |

---

* Mr. Justice TODD was absent during the whole of this term.

A purchaser who buys property adjudicated to a succession representative at a judicial or forced sale of the same, in furtherance of an agreement between them that he will not bid thereon against him, and whose purchase is subsequently annulled in consequence of such reprobated combination, must be considered and dealt with as a buyer who purchases with knowledge of the danger of eviction and at his peril and risk. Under such circumstances he cannot, after eviction, repete the price paid.

No case can be found where, money having been paid by one of the parties to the other upon an illegal contract, both being *participes criminis*, an action has been maintained to recover it back.

APPEAL from the Fifth District Court, Parish of Ouachita. *Richardson*, J.

*R. Richardson* and *M. J. Liddell* for Plaintiff and Appellee.

*Talbot Stillman* for Defendant and Appellant.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an action to recover the price of property sold by defendant to plaintiff and from which the latter was judicially evicted.

The defense was: *first*, a general denial, and *next*, a specification or enumeration of the grounds for which plaintiff should not recover.

The case was tried by a jury who found for plaintiff. Judgment having been accordingly entered, the executor of the defendant, who died since suit, has taken this appeal.

The record contains *four* bills of exception. One by plaintiff to the ruling of the district judge allowing the supplemental answer to be filed, and *three* by defendant; the *first* to the admission of the act of sale, the *second*, to the refusal of the court to allow the introduction of the testimony of the defendant in another case; the *third*, to the refusal of the judge to permit him to contradict plaintiff, whom he had made his witness, by plaintiff's own testimony in a different suit against him.

The objections urged to the filing of the supplemental answer, are: *that* it changed the previous issues and raised new ones, entirely inconsistent with those originally formed, and *that* the amendment came too late.

The substantive allegations of the petition are: that plaintiff bought property of defendant, for a paid price; that he was subsequently evicted by judgment of court and that he is entitled to recover the price.

The pith of the general denial is a protest against the liability charged. Such a defense leaves the burden of complete proof on the

plaintiff, but does not justify special defenses implying a pre-existing but extinguished obligation and which should be expressly set up.

A petition may be amended, *provided*, the amendment does not alter the substance of the demand, that is: the prayer, by making it different from that originally formed.

An answer can likewise be amended, subject to the same rule. The defendant may even add peremptory exceptions to it. C. P. 419, 420.

Amendments are reducible to no unbending rule. Each case must be left to the sound discretion of the court. They should always be permitted where they tend to the furtherance of justice and cause no injury, without prejudice to the right of the other party, who may plead and show surprise, to ask time to prepare himself. H. D. 1182 (9) C. P. 421; L. D. 554 (1).

The amended answer, complained of in this case, does not alter the prayer of the original one. It contains no allegations antagonistical to the previous defense, shaped into a general denial. It elaborately enumerates the reasons for which the defendant cannot be held liable. It sets up facts and legal deductions therefrom, likely to have arisen, after proof by plaintiff of his allegations. It is practically nothing more than a peremptory exception filed after the closing of the evidence, which is permissible at any stage of the proceedings.

It does not appear that the plaintiff has pleaded surprise, asked time and was refused the same. We cannot say that the district judge erred in allowing it to be filed.

We deem it unnecessary to consider the bills of exception of defendant, as the admitted evidence cannot prejudice him and the rejected testimony is cumulative and actually superfluous.

The facts, indisputably established, are:

S. Meyer purchased from W. W. Farmer, for $4500, paid, a piece of property known as the King place, in Monroe, adjudicated to him with other real estate for $7383 33, under executory proceedings by a mortgage creditor, against the succession of Morrison, of which he, Farmer, was to Meyer's knowledge, the administrator. The purchase was made in furtherance of an understanding between them, previous to the crying, that Meyer, who intended bidding on that property, would not do so, against Farmer, who also proposed and was anxious to buy it; that after the adjudication to Farmer he would sell it to Meyer, for the price agreed. The entire property, inventoried at $12,000, was adjudicated in block, including the King place, to Farmer for $7383 33, that being the two-thirds of the appraisement. There was no other bid

besides Farmer's.   Meyer had absented himself from the place of sale on the occasion.

Farmer was subsequently removed as administrator and suit was instituted by his successor, both against him and against Meyer, for the nullity of the adjudication to him and of the sale by him to his vendee. The litigation ended by final judgment annulling the two transactions complained of and the two pieces of property reverted to the succession.

The reasons assigned in the suit against Farmer expressly form part of the opinion in that against Meyer, the facts being identical, or nearly so, in both controversies.

In the opinions which we delivered at the time (34 A. 1020 and 1031), we emphatically stigmatized the two transactions as offensive and prohibited by law.   In the case of Chaffe vs. Meyer, this very defendant, it was said:  " If the sale to Farmer was a nullity, the sale by him to Meyer who was aware of all the circumstances of the same and a party thereto, is likewise a nullity."   We adduced authorities establishing the proposition, that, agreements whereby parties combine not to bid against each other, at public auction, especially in cases where such auctions are required by law—are void—for they are unconscientious, against public policy and have a tendency to injuriously affect the character of such sales, to mislead private confidence and operate, virtually, as a fraud upon the sale.

From that state of facts and this appreciation of the law applicable thereto, it is manifest that the contract, one of the elements of which is sought to be enforced in this case, was palpably immoral and such as courts of justice cannot enforce without desecrating their lofty mission.

It is also apparent that, as no one can claim ignorance of the law and is bound to know it at his risk, Meyer *knew* that his previous understanding with Farmer, who was the administrator of the succession of Morrison, and the subsequent execution of it, culminating into the sale and purchase, was reprobated, because against good morals and public policy.   He cannot, therefore, be listened to say, in the present suit, that the particular act in question has been proved not to be fraudulent or not contrary to public good, R. C. C. 19, as the law transgressed by him was enacted to prevent fraud, or for some other motive of public order or interest, declared the act void.   He further knew that the adjudication to Farmer was one susceptible of annulment on that ground.   He, nevertheless, purchased from Farmer and paid the price.

Under those circumstances can he, as an evicted purchaser, claim the return of the price?

The law, it is true, is positive that even in case of stipulation of no warranty, the seller, in case of eviction of the purchaser, is liable to a restitution of the price; but after laying this rule down as a general principle, it formally announces the exception, that this shall not be the case, where the buyer, at the time of sale, was aware of the danger of eviction and purchased at his peril and risk. R. C. C. 2505.

In the application of this law this Court has frequently announced that where the vendee was aware of the defects of his title, and therefore purchased at all hazards, he was entitled to no claim by reason of eviction. 5 R. 76; 3 A. 326; 5 A. 314, 491, 667, 683; 6 A. 297; 21 A. 248, 721; 6 L. 550; 3 R. 434; 4 A. 321; 18 A. 232.

This article of our Code is borrowed from the Napoleon Code. C. N. 1629; and derives, on principle, from the Roman law.

While commenting upon it, the French writers say:

"La connaissance dont parle notre article n'est pas seulement celle que le vendeur a donnée expressément du danger de la chose, mais celle que l'acheteur pouvait avoir au moment du contrat par quelque moyen que ce soit." V. Dalloz, garantie No. 125; Troplong, Vente, 484.

"Celui qui achète, à ses risques et périls, soit qu'il le déclare en termes exprès, soit que son intention se révèle par des expressions analogues, n'a pas le droit de réclamer le prix par lui payé; car ce prix n'est pas précisément la représentation de la chose qui lui est transmise. Il est l'équivalent des prétentions, des chances qui lui sont offertes." Duvergier, Vente No. 339; Favard, Vo. Vendeur, sec. 2, § 1, No. 5.

In proper cases the law affords a *locus penitentiæ* to the *particeps criminis* and allows him to plead as was done in this case, that a contract into which he has voluntarily formed is *contra bonos mores*. The authorities make an exception to the general rule: *nemo allegans turpitudinem suam audiendus*, which is founded upon the necessity of the case and the paramount interest of the public. Gil vs. Williams, 12 A. 221.

In cases of that description, this Court has distinctly announced that the law whose mission is to right the innocent and to enforce the performance of licit obligations only, leaves parties who traffic in forbidden things and then break faith, to such mutual redress as their own standard of honor may award. Boatner vs. Yarsborough, 12 A. 250.

It was also said, more than once, that courts of justice will not aid parties in the enforcement of the effects of contracts made in violation

of law. 12 A. 167; 1 A. 178; 19 A. 332; also, 3 M. N. S. 48; 17 L. 120; 7 Wall, 548, Cappel's case; 11 Wheaton, 258, Armstrong's case; 4 Peters, 189, Bartles' case; 68 N. Y. 558; 57 N. Y. 518, (533).

Eighty years and more ago, Lord Kenyon, in the Court of King's Bench, emphatically said:

"No case can be found where, when money has been paid by one of two parties, to the other, upon an illegal contract, both being *participes criminis*, an action has been maintained to recover it back." Houson vs. Hancock, 8 T. R. 575.

Under the weight of those conservative expositions of the law, we cannot conceive how it is possible for us to allow the plaintiff the relief which he seeks.

The jury who rendered a verdict in his favor took rather a business than a legal view of the nature of his demand and the district judge who rendered judgment on their finding, no doubt thought it was preferable to do so, as the case was to be taken up for review on appeal.

It is, therefore, ordered and decreed that the verdict of the jury be set aside and the judgment upon it avoided, annulled and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of the defendant or his succession, rejecting plaintiff's demand, with costs in both courts.