OVERTON, J.
 

 This is a suit by which plaintiff seeks to be decreed the owner of 4,000 shares of the capital stock of the Shreveport Producing & Refining Corporation, and to cause the stock to be delivered to her within a time to be fixed by the court, and, in the event of the failure of defendants, or either of them, to deliver the stock, to obtain judgment against them in solido for $40,000, alleged to be the par value of the stock, with legal interest thereon from January 9, 1920.
 

 The suit was instituted against the corporation named and Newton O. Blanchard, who, at one. time, was Governor of this state. During the pendency of the suit, Governor Blanchard died, and the administratrix of his estate was made a party defendant in his place.
 

 The record discloses that a number of business men in Shreveport concluded to form a syndicate for the purpose of constructing and operating an oil refinery, the syndicate to be capitalized, according to the final understanding reached, at $1,000,000, the stock to be divided into units, each unit to represent 8,000 shares, of the value of $20,000, or $2.50 a share. The plan was, after the syndicate should 'get sufficiently under headway to justify it, to merge it into a corporation, and to have stock of the corporation issued to those subscribing and paying for it through the syndicate, the purpose in forming the syndicate being to obtain subscriptions for stock, to collect therefor, and, at the proper time, to transfer the assets of the syndicate to the corporation.
 

 E. R. Bernstein was elected trustee for the syndicate, and, in his capacity as such, he obtained subscriptions for stock and collected for the same. At the first meeting held by the members of the syndicate, Governor Blanchard subscribed for one unit of- stock, or 8,000 shares. A few days later he sold one-half of this unit to his son, Dr. J. A. Blanchard, and gave him a letter showing the sale. On November 18, 1919, both Governor Blanchard and his son gave their checks for $10,000 each to E. R. Bernstein, trustee, in full payment for the interest that each owned in the unit subscribed for by Govern- or Blanchard. Dr. Blanchard sold the half unit he had acquired, or rather the right to it, when issued, to J. J. Hollingsworth, on January 9, 1920. Hollingsworth then transferred the right he had acquired to this half unit to his sister, the plaintiff herein.
 

 
 *713
 
 About this time the Shreveport Producing & Refining Corporation, made one of the defendants in this case, was organized for the purpose of taking over the assets of the syndicate and of accomplishing the purposes for which the latter was formed. On January 12, 1920, pursuant to plans adopted by the syndicate, E. R. Bernstein, trustee, made a written offer to the corporation to transfer to it all of the assets of the syndicate, consisting of money, movable and immovable property, and certain rights acquired by the syndicate, for a temporary certificate of
 

 400.000 shares of stock of the corporation, the stock to be placed in escrow in the Commercial National Bank until the expiration of a certain time. On the same day that the offer was made the board of directors of the corporation accepted the offer, and caused to be issued to Bernstein, trustee, a certificate of stock for 400,000 shares. It was understood that this temporary certificate would be surrendered to the corporation, and in its place certificates issued to those who had subscribed in the syndicate for stock, or to their assigns, their names and the amounts to be disclosed by the trustee. Under date of January 16, 1920, E. R. Bernstein, trustee, wrote a letter to the Shreveport Producing & Refining Corporation, reading as follows, to wit:
 

 “I beg to hand you herewith stock certificate No. 1 for 400,000 shares of the Shreveport Producing & Refining Corporation issued to E. R. Bernstein, trustee, which I shall thank you to cancel and issue 400,000 shares to the order of the following parties in the denominations shown opposite their names.”
 

 Following the paragraph, quoted above, is a list of the persons, referred to therein, with the number of shares to be issued to each or to his order, the number amounting in the total to 400,000 shares. In this list Governor Blanchard is set down as entitled to 8.000 shares, or one unit. J. J. Hollingsworth, the brother • of the plaintiff, Miss Hollingsworth, is stated therein to be entitled to 20,-000 shares or 2% units.
 

 Plaintiff contends that she has never received the half unit of stock which she acquired from her brother, J. J. Hollingsworth, and which represents one-half of the unit subscribed for by Governor Blanchard at the first meeting of the members forming the syndicate. Her theory is that this half unit was included in an issue of one entire unit made, on March 20, 1920, one-half to Governor Blanchard, and the remaining half, by his directions, in equai proportions, to his widow and minor child, Newton C. Blanchard, Jr. The administratrix of the estate of N. C. Blanchard, replies to this hy pointing out that, after Governor Blanchard had sold to his son, Dr. J. A. Blanchard, through whom plaintiff claims, a one-half unit of the stock, subscribed for by him at the first meeting of the syndicate, he, on or about January 22, 1922, subscribed for an additional one-half unit of stock, one-half of which, was - for her, who was then his wife, and the remaining one-half for his minor child, N. O. Blanchard, Jr. Plaintiff contends in answer to this that the additional subscription was made after the letter - of E. R. Bernstein, trustee, dated January 16, 1920, was written, and hence that the unit of stock, which the trustee in that letter directed to be issued to Governor Blanchard or his order, could not have included this additional subscription, since that subscription had not then - been made, and moreover, because there was no more stock to be sold when it was 'made. From these premises plaintiff argues that, when Governor Blanchard received an entire unit for himself, his wife, and minor son,- he, though without knowing that she had been sacrificed to comply with his subscription, received for himself and the members of his immediate family the half-tinit which he had sold to his elder son,- 'Dr. Blanchard, and which she had acquired. The corporation
 
 *715
 
 ■on its part contends, among other things, that instead of J. J. Hollingsworth having subscribed for 2^ units of stock, he subscribed for only 2 units, and hence, when the trustee in his letter listed him as entitled to 2% units, this included the half unit which plaintiff contends she acquired from him, the corporation apparently taking the position, in this connection, among others, that, if plaintiff ever acquired that half unit, it was not notified of it before the issuance of the stock to her brother.
 

 If January 16, 1920, is to be accepted as the correct date of the letter written by Bernstein, trustee, directing to whose order the stock should be issued, then it would seem to follow that the listing of Governor Blanchard, as being entitled to one unit of stock, had reference to the unit subscribed for by him when the syndicate was first organized, and did not, and could not, include the half unit subsequently subscribed for by him, and, since that letter names each person to whose order the entire stock, amounting to 400,000 shares, is to be issued, and the number of shares each person named is entitled to direct the issuance of, it would seem that when Governor Blanchard entered his second subscription and paid for the stock to be issued, which he unquestionably did, there was no stock left to be sold.
 

 However, in our view, January 16, 1920, is not the true date of the letter. There were a number of subscriptions entered and paid for after that date, some as late as March and the early part of April, when, as a matter of fact, the names of the persons who then subscribed and paid their subscriptions are stated in the letter. This could not be the case, if the true date of the letter was January 16, 1920. While it is true that some stock was issued as early as February 24, 1920, and from that time on, still it appears that the trustee was in almost daily communication with the secretary of the corporation and gave him instructions from time to time relative to the issuance of stock, and that the letter, of date January 16, 1920, was intended merely to take the place of the oral instructions given, and for that reason was antedated. It may also be 'observed that the letter discloses that the typist, in writing the date, apparently first wrote the month as April, and then crossed it out and wrote January.
 

 Our conclusion is that the letter was written much later than January 16th — -apparently some time in April — and hence does not support plaintiff’s theory that, on January 16, 1920, all of the stock of the corporation had been sold, and therefore that there was none to. sell Governor Blanchard or any one else after that date.
 

 Nor do we think that there is anything lending any real suppdrt to the theory that there was no stock left to be sold, after the date mentioned, to be found in the proposition of the trustee to transfer the assets of the syndicate to the corporation. While the proposition shows that the syndicate had considerable money on hand at that time and some property, yet there is nothing in it indicating that this money and property represented the total proceeds of the sale of the stock.
 

 Nor do we think it strange that, notwithstanding all of the stock had not been sold, the corporation nevertheless, in accepting the proposition, issued a certificate to the trustee for 400,000 shares of stock for the assets of the syndicate, the certificate to be placed in escrow. This was purely a formal matter — a method of procedure adopted in forming the corporation to take over the affairs of the syndicate, in the adopting of which, the corporation, in reality, took no serious chances. The corporation, under the circumstances, could well have awaited the sale of the remaining stock, and in the meantime proceeded to complete its organ
 
 *717
 
 ization by taking over the assets of tbe syndicate and issuing stock to those who had subscribed. Our conclusion is that when Governor Blanchard subscribed the second time there was still stock to be sold.
 

 Our conclusion is, also, that it is established by the evidence that the one-half unit which Governor Blanchard sold out of his first subscription to Dr. Blanchard, who in turn sold it to J. J. Hollingsworth, and which is now claimed by plaintiff, was included in the 2% units issued % the corporation in March and April, 1920, to J. J. Hollingsworth and to those to whom he directed it to be issued.. In other words, the evidence, we think, shows that J. J. Hollingsworth subscribed and paid’ for only 2 units of stock, and that the additional half unit, with which he was credited, is the half unit, in question here, which he acquired from Dr. Blanchard in the presence of the trustee. The plaintiff has no cause of action against the corporation for having thus issued the half unit, for she did not notify it that she had acquired this half unit until long after the issuance of the stock.
 

 The trial judge rejected the demands of Xilaintiff. We think that his judgment is correct.
 

 For these reasons, the judgment appealed from is affirmed.