### SCHAEFER et al. v. COUSINS.

### No. 17169.

Court of Appeal of Louisiana. Orleans.

May 22, 1939.

Rehearing Denied June 12, 1939.

See 189 So. 621.

Writ of Certiorari Denied June 26, 1939.

Daly & Hamlin, of New Orleans, for appellee Mrs. Mary Schaefer Bonnelucq.

· Schwarz, Guste, Barnett & Redmann and Edward H. Sutter, all of New Orleans, for appellants Congregation Temple Sinai and Touro Synagogue.

WESTERFIELD, Judge.

This is a contest over a sum of money amounting to $493, which has been deposited in the Registry of the Civil District Court for the Parish of Orleans. The Hebrew Rest Cemetery Association composed of the Congregation Temple Sinai and the Congregation Gates of Mercy of the Dispersed of Judah, Touro Synagogue, which we shall hereafter refer to as the Hebrew Cemetery Association, was the highest bidder and the adjudicatee at a public auction held pursuant to an order obtained in the Succession of Charles Frederick Schaefer, Sr., whereby certain property in the Third District of this City, more particularly described in the petition filed herein, was sold for $3,900, for the payment of succession debts. Subsequent to the adjudication, counsel for the Hebrew Cemetery Association discovered that Mrs. Louise Weider Brocker, Wife of Charles Frederick Schaefer, Sr., had died intestate in the City of New Orleans on July 22nd, 1935, and that her succession was opened under No. 213,891 of the docket of the Civil District Court for the Parish of Orleans, and her seven children, Charles Frederick Schaefer, Jr., Christian· Charles Schaefer, Frederick Charles Schaefer, Henry Schaefer, Wilhemina C. Schaefer, Wife of Homer McDonald, Louise Schaefer, Wife of Nemour J. Cousins and Mary Schaefer, Wife of Henry Bonnelucq, were recognized as her sole ·and only heirs and, as such, were sent into possession subject to the usufruct of their father, Charles Frederick Schaefer, Sr., of an undivided one-half interest in the property which had been adjudicated to the Hebrew Cemetery Association. As a consequence of this discovery, it appeared that the Succession of Charles Frederick Schaefer, Sr., owned only an undivided one-half interest in the property and consequently could not convey a clear title to the entire property. However, negotiations were entered into with the heirs of Mrs. Schaefer, all of whom, with the exception of Mrs. Louise Schaefer, wife of Nemour J. Cousins, agreed on November 29th, 1937, that the order of sale under which the adjudication was made should be annulled and revoked and the seven heirs of Mrs. Schaefer be put into possession of the undivided one-half interest of their father and the property sold to the Hebrew Rest Cemetery Association for the same· price of $3,900, for which it. had been adjudicated.

Since Mrs. Louise Schaefer Cousins declined to sign the petition putting the heirs into possession on the ground that she did not desire a cemetery so near her home, and since she was not in agreement with the other six heirs, a partition by licitation· was provoked and the property again sold at public auction, this time bringing $10,-805, for which amount it was adjudicated to the Hebrew Cemetery Association. Under the agreement with the six heirs it was stipulated:

"That if the above described property, when sold at public auction in the contemplated partition proceedings, bring less than $3900.00, the First Parties (Hebrew Cemetery Association) will pay to the Second Parties (the heirs) six-sevenths (%)

of the difference between the amount of the purchase price of the second sale and Thirty-Nine Hundred ($3900.00) Dollars; provided of course, that the First Parties are successful in purchasing the property.

"That in the event that at the partition sale the said property should bring more than $3900.00 and the First Parties are purchasers at the said sale, the Second Parties agree to reimburse the First Parties six-sevenths (6⁄7) of any amount over and above $3900.00 which the First Parties may pay for the above described property at the partition sale.

"First Parties are in no way bound to the Second Parties to purchase the above described property at the partition sale, after the bidding on said property had reached $3900.00, and in the event they do not purchase, they waive any claims for damages against the estate."

After the property had been sold at auction the second time in the partition proceedings, Mrs. Mary Schaefer, Wife of Henry Bonnelucq, through her counsel, notified Warren Coleman, the notary public before whom the act of partition and sale was to be passed, that she would not be a party to the proceedings unless she was settled with upon a basis of her share of $10,805 instead of $3,900 as she had agreed to, assigning as her reason therefor, that the agreement was invalid. In order not to delay the transfer of the property an agreement was entered into on June 1st, 1938, whereby Mrs. Bonnelucq signed the act of sale and partition without prejudice to her right to litigate the question of the validity of the agreement of November 29, 1937, and the additional sum which would be due her in the event she should succeed in maintaining her position was deposited in the Registry of the Court.

Mrs. Mary Schaefer Bonnelucq thereafter filed a petition in the partition proceedings against the Hebrew Rest Cemetery Association, in which she attacked the agreement of November 29, 1937, to which she had been a party, upon the ground that it was without consideration, a nudum pactum, and against public policy, in that it tended to stifle the bidding at a public auction.

After a hearing there was judgment below in Mrs. Bonnelucq's favor as prayed for and the Hebrew Rest Cemetery Association has appealed.

The agreement, under attack, in effect provides that if the property, when put up at auction in the partition proceedings, should bring less than $3,900, and the Hebrew Cemetery Association should become the adjudicatee, that it would pay to the heirs the difference between the amount which the property brought and $3,900, the amount which it brought at the first auction sale under the order to pay the debts of the succession of Charles Frederick Schaefer, Sr. In the event that the property brought more than $3,900 and the Cemetery Association became the adjudicatee the heirs agreed to reimburse the Cemetery Association the difference between $3,900 and the amount which it paid for the property at the auction sale. In other words, the heirs, with the exception of Mrs. Cousins, were satisfied that the $3,900 which the property brought at the first sale was a fair price—incidentally the property was valued at $1,500 in the inventory in the Schaefer Succession—and concluded that they would like to assure themselves that they would ultimately get that amount for the property before undertaking the partition proceedings and second sale.

Counsel for Mrs. Bonnelucq cite the following cases: First National Bank of Abbeville v. Hebert, 162 La. 703, 709, 111 So. 66; Swain v. Kirkpatrick Lumber Company, 143 La. 30, 38, 78 So. 140, 20 A.L.R. 665; Merchants' Insurance Company v. Addison, 9 Rob. 486, 489; Chaffe v. Farmer, 34 La.Ann. 1017; Meyer v. Farmer, 36 La.Ann. 785, 788; Cahn v. Baccich and De Montluzin, 144 La. 1023, 81 So. 696, and others. All of these cases relate to agreements to stifle bidding at auction sales, particularly judicial sales, which were held to be void. For example, in the First National Bank of Abbeville v. Hebert case, it is said [162 La. 703, 111 So. 69]: "An agreement whereby parties engaged not to bid against each other at a public auction, especially where the auction is required or directed by law, as in sales of property under execution, and where one of the parties to the agreement is a party to the proceeding, is a sufficient cause for annulling the sale. Revised Civil Code, art. 1847, § 12; Merchants' Insurance Company v. Addison, 9 Rob. 486; Chaffe v. Farmer, 34 La.Ann. 1017; Swain v. Kirkpatrick Lumber Co., 143 La. 30, 78 So. 140, 20 A.L.R. 665, quoting from 2 R.C.L. 1131, § 16; 6 C.J. 830, 831, §§ 31, 32."

And in Swain v. Kirkpatrick, supra [143 La. 30, 78 So. 142]: "The judgment of the trial court in setting aside the sheriff's sale was also fully justified because of the acts of defendant's agent in deterring another from bidding, regardless of what his motive was, honest or fraudulent. His acts caused great prejudice to this plaintiff by preventing others from giving a greater price for the lumber."

In Book 3 of the Revised Civil Code, under the Title entitled "Conventional Obligations" and under the caption "Of the Nullity Resulting from Fraud", Article 1847 provides that "Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other". Paragraph 12 of this Article reads: "Combinations with respect to sales to enhance the price by false bids or offers, or to depress it by false assertions, are artifices, which invalidate the contract, when practiced by those who are parties to it, or give rise to an action for damages where they are not."

The basis of the decisions which invalidate contracts with respect to refraining from bidding at public auctions is that such contracts are against public policy and amount to fraud.

"Agreements whereby parties engaged not to bid against each other at public auction, especially in cases where such auctions are directed or required by law, as in cases of sales of chattels, or other property on execution, are held void, for they are unconscientious, and against public policy, and have a tendency injuriously to affect the character and value of sales at public auction, and to mislead private confidence. They operate virtually as a fraud upon the sale." Story's Equity Jurisprudence, Volume 1, Page 290, No. 293, quoted with approval in Eastin v. Dugat, 10 La. 186, 187, 29 Am.Dec. 461.

In the case at bar, the agreement under attack did not contemplate the stifling of bidding at the auction sale. As a matter of fact, the property brought almost three times the amount that it sold for previously—some eight months before and four months before the agreement had been entered into. Moreover, it seems to us that it comes with ill grace from the plaintiff in this case to demand the advantages of a sale provoked in accordance with an agreement which she repudiates. If the contract entered into between the parties was a "legal crime" and reprobated by public policy, then all things done in carrying out that contract were "tarred with the same brush" and consequently illegal, but in our opinion the contract was not fraudulent. Of course, it may be said that the Hebrew Cemetery Association was in a better position to acquire the property at a price in excess of $3,900 than other bidders at the sale, because it had only to pay one-seventh of the enhancement to Mrs. Cousins, who did not participate in the agreement, whereas other bidders would be obliged to pay the full amount of the adjudication, but if the owners of property in order to be sure of receiving what they regarded as a just price for their property before incurring the expenses of a public sale, desired to enter into an agreement of this sort, who can complain? Not the bidders for there was no conspiracy to prevent the property bringing a just price nor was it against public policy since it did not "chill" the bidding.

As to the charge that the contract is without consideration, Article 1896 of the Revised Civil Code reads as follows: "By the cause of the contract, in this section, is meant the consideration or motive for making it * * *".

In Shreveport Laundries v. Teagle, La. App., 139 So. 563, 567, the Court of Appeal for the Second Circuit said: "Under the civil law, as at common law, it is not necessary that the consideration received * * * for incurring an obligation shall be an equivalent consideration. The question of adequacy of the consideration is a matter for the parties themselves to determine. But, while at common law any lawful consideration for a contract is deemed sufficient, the civil law requires that the consideration must be serious and not altogether out of proportion to the obligation. Article 2464 of the Civil Code so provides, specifically, for the contract of sale; and in Murray v. Barnhart, 117 La. [1023] 1030, 42 So. 489, it was held that the doctrine of the civil law in that respect, being as old as the civil law itself, was applicable, not only to contracts of sale, but to all other contracts."

The agreement contained the reciprocal obligation whereby the Schaefer heirs, including Mrs. Bonnelucq, agreed to reimburse the Hebrew Cemetery Association any amount that they paid in excess of $3,-

900 and the Hebrew Cemetery Association agreed to make up any deficiency up to $3,900 in the price. The consideration moving to the heirs was the assurance that they would receive $3,900 and to the Hebrew Cemetery Association that they would get the property for that amount plus the excess they might have to pay to Mrs. Cousins. The plea of want of consideration is not well founded and since both parties are bound under the agreement it follows that the attack upon it as a nudum pactum must also fail.

For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of the defendant dismissing plaintiff's suit at her cost.

Reversed.